## Daly v. Power.

(Decided December 9, 1930.)

CHARLES L. DALY and EDWARD C. O'REAR for appellant.

THOMAS D. SLATTERY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Charles L. Daly appeals from a judgment allowing him a fee of $3,000 for his services as attorney for plaintiff in an action brought by Elizabeth W. Power, as administratrix with the will annexed of her father, John H. Wilson, and in her own right, against Anna Weedon and others.

The facts are these: In 1887 John H. Wilson died testate a resident of Mason county, survived by his widow, Mary C. Wilson, and two daughters, Sallie Morrison Wilson, then married to Mr. Browning, and Elizabeth Wilson, who afterwards married a Mr. Power. Mrs. Browning died without issue in the year 1889, and her husband died in 1897. The widow, Mary C. Wilson, died

in the year 1908. At the time of his death the testator owned five pieces of real estate in the city of Maysville, and a farm on the Maysville and Mt. Sterling pike containing about 216 acres.

In the first clause of the will the testator gave to his widow all of his real estate of every kind so long as she remained his widow, with the right to control and manage it for the benefit of herself and her two daughters. In the same clause he gave to his executors the power to sell and convert into money all of his real estate, except his residence and the farm, and empowered them to collect all money due. After paying the cost of administration they were directed to invest the surplus in land and take the title thereto to his wife and his two daughters for the use and benefit of them and her during her widowhood, "with remainder to my two daughters upon the death of my wife, or her marriage before that event, one moiety to each for her life, with remainder over in fee to the issue of each, alive at her death, if any, of her moiety; in case either of my daughters should die without issue alive at her death, or should both die without such issue, then the moiety of the daughter or daughters so dying to vest in my heirs at law alive at such time or times." It seems that the members of the legal profession of Mason county were of the opinion that Mrs. Power took only a life estate in the moiety of Mrs. Browning upon her death without issue, and that one attorney had given a written opinion to that effect. After a lengthy investigation of the question and a careful examination of all the authorities he could find, Mr. Daly came to the conclusion that Mrs. Power took a fee in her sister's moiety and so advised Mrs. Power. After spending some time in ascertaining the names and addresses of the collateral heirs of John H. Wilson, Mr. Daly brought suit against them on behalf of Elizabeth Power as administratrix, and in her own right, in which she asked that she be directed to sell the city property for reinvestment, or that the estate of John H. Wilson be divided into two equal moieties so as to give her one moiety absolutely and a life interest in the other. In connection with the suit counsel prepared an affidavit for a warning order against 27 nonresident defendants. Process was served on the local defendant, Anna Weedon, and a warning order issued against the nonresidents. Some of the defendants employed J. P. McCartney as their attorney, while others employed the firm of Worthing-

ton, Browning & Reed. After their demurrer to the petition had been overruled, the defendants filed an answer and counterclaim in which they denied the necessity for a sale and reinvestment of the city property, as well as the court's power to order a sale, and alleged affirmatively that Mrs. Power took only a life estate or defeasible fee in the moiety of her sister, Sallie Browning, and that upon her death without issue the entire estate passed to the defendant. The issues were completed by a reply. On behalf of his client, Mr. Daly gave notice and attended the taking of the depositions of five witnesses concerning the condition of the property and the propriety of a sale thereof for purposes of reinvestment. On final hearing the trial court adjudged that Mrs. Power took the fee in her sister's moiety of her father's estate, and ordered a sale for reinvestment of what is known in the record as the livery stable lot, but deferred action as to the sale of other parcels of city property. From so much of the judgment as construed the will in Mrs. Power's favor, the collateral heirs appealed, and Mrs. Power prosecuted a cross-appeal for the purpose of obtaining an order from this court directing the trial court to order a sale of the other city property and a reinvestment of the proceeds. Judge John D. Carroll was employed to brief the case on behalf of Mrs. Power, and charged for his services a fee of $250. Mr. Daly not only filed a separate brief, but consulted with Judge Carroll concerning the preparation of his brief. At first Judge Carroll was inclined to the view that the court was without power to order a sale and reinvestment of the city property, but, after being shown some recent cases by Mr. Daly, acquiesced in the latter's view that this could be done. On the original appeal the judgment was affirmed. Though of the opinion that an owner of a life estate in an undivided part of an entire tract of land, who also owns absolutely the other part, may maintain an action against the contingent remaindermen of his life interest for its sale and reinvestment, the court dismissed the cross-appeal and refused to order a sale and reinvestment of the city property, as the matter was before the trial court and had been reserved for future adjudication. Weedon v. Power, Adm'x., 202 Ky. 542, 260 S. W. 385.

On the filing of the mandate, Mr. Daly asked for the appointment of commissioners to divide the property and had several consultations with the court in regard to the

matter. The court agreed on the appointees, but postponed action until the other parties could be consulted. In the meantime, Mrs. Power discontinued the services of Mr. Daly and employed other counsel to proceed with the action.

On the hearing, Mr. Daly went into great detail as to the time consumed, authorities consulted, the various steps taken, and the number of difficulties with which he was confronted in the prosecution of the action. He fixed the value of the entire property at $150,000. Taking the position that he recovered one-half, or $75,000, for Mrs. Power, he asked an allowance of $35,000. He also stated the property was in bad repair, the income therefrom was small, and not sufficient to enable Mrs. Power to put on the property such repairs as would enable her to receive a reasonable income therefrom. To sustain his allowance Mr. Daly introduced several prominent lawyers from various parts of the State. Two lawyers from Louisville fixed the fee at $12,000, of which $10,000 was for services rendered in the suit referred to, and $2,000 for outside services. An attorney of Ashland fixed the fee at 33 1/3 per cent. of the value of the rights and remedies secured for Mrs. Power. An attorney from Franklin fixed the fee at $25,000, but stated on cross-examination that, assuming the amount involved to be $18,250 the fee should be $9,125. An attorney from Lexington fixed the fee at from 30 to 40 per cent. of the value of the benefits which Mrs. Power obtained through Mr. Daly's services. If the amount of the recovery was only $18,-250, Mr. Daly should receive between 30 and 40 per cent. of that amount. An attorney from Paris fixed the fee at 33 1/3 per cent. of the fair value in money of the benefits accruing to Mrs. Power by reason of Mr. Daly's services. Of two local attorneys, one fixed the fee at 33 1/3 per cent. of the amount of gain, and the other at from 15 to 40 per cent. D. Ed Bullock, one of the commissioners appointed by the court, testified that, prior to the sale of the livery stable property for $16,000, the city property and the farm property were about equal in value. John Arn, a real estate agent, fixed the total valuation of the city property at $37,000. It would seem, however, that this estimate does not include the proceeds of the livery stable, amounting to $16,500. George Pollitt testified that the four pieces of city property were worth $34,650. T. A. Keith, Jr., fixed the value of the five parcels at $37,200, but did not include in that the

Montgomery Ward building that had been · recently erected. J. C. Everett, Jr., fixed the value of the city property at $39,000. John Kain estimated the value of all the city property at $32,000.

On the other hand, the circuit judge, who was acquainted with the services rendered by Mr. Daly, was of the opinion that a fee of from $2,000 to $3,000 was reasonable. Of this he fixed the fee for a sale and reinvestment at from $600 to $1,000, and for the services in having the will construed at $1,500. Of the three attorneys from Flemingsburg one fixed the fee at from $2,000 to $2,500, one at $2,500, and the other at from $2,500 to $3,000. An attorney of the Maysville bar fixed the fee at $3,000. Of the two attorneys who represented the collateral heirs, one, a member of the Flemingsburg bar, fixed the fee at $2,500, and the other, a member of the Maysville bar, fixed the fee at from $2,000 to $2,500.

In his petition or motion therefor appellant asked an allowance of $2,857.65 for about ten years' services not connected with the litigation in question, and on motion of Mrs. Power this claim was stricken from the petition. Manifestly, the court had authority only to fix a fee and adjudge appellant a lien for the services rendered in the particular action. Any claim for legal services not connected with the litigation is a matter to be presented in an independent action with the right on the part of Mrs. Power to make defense as in other cases. In the circumstances the ruling was proper.

It doubtless is true, as contended by counsel for appellant, that, unless the employment of an attorney is on a contingent basis, the amount of his compensation is not to be measured altogether by the result obtained, but it is equally true that that is one of the principal items to be considered, together with the amount and character of services rendered, the labor, time and trouble involved, the nature and importance of the litigation, the responsibility imposed, the value of the property in litigation, the skill and experience called for in the performance of the services, and the professional character and standing of the attorneys. Morehead's Trustee et al. v. Anderson, 125 Ky. 77, 100 S. W. 340, 30 Ky. Law Rep. 1137; Axton v. Vance, 207 Ky. 580, 269 S. W. 534. While the opinions of attorneys concerning the amount of a fee are admissible for the purpose of informing the court as to what is just and reasonable under the circumstances, the court is not bound by their

opinions, but may review the character, extent, and results of the legal services and determine for itself what is a reasonable fee. Marble v. Husbands, 185 Ky. 605, 215 S. W. 435. This, however, does not mean that the court may arbitrarily disregard the evidence, refuse to be informed by it, and fix the fee at any sum it may choose without being responsible, for an abuse of discretion. Robbins v. Jones' Ex'r, 211 Ky. 211, 277 S. W. 333.

As in most cases of this kind there is a wide divergence of views respecting the allowance that should be made. It is impossible to account for the difference in the estimates except upon the theory that the scale of fees in Mason and adjoining counties is less than that prevailing in other parts of the state, or the theory that the witnesses for opposing sides differ widely as to the character, extent, and results of the services performed. After hearing the evidence the special judge fixed the value of the entire estate at $100,000, and we find ourselves in accord with this finding. Therefore, so far as the construction of the will was concerned, the amount in controversy as well as the amount of recovery was the difference between a fee simple and a life estate in property worth $50,000. According to Wigglesworth's Tables Mrs. Power's life estate was worth 63½ per cent. of that sum. When calculated on this basis her gain is 36½ per cent. of $50,000, or $18,250. But this method of measuring the result is attacked on the ground that the city real estate was in bad repair, the income was not sufficient for that purpose, and the situation was such that, even if the life tenant had the money, she would not feel justified in making permanent improvements that would redound only to the benefit of the remaindermen. Manifestly the same factors that would lessen the value of the life estate would have a corresponding effect on the entire estate, and, though the question is not altogether free from difficulty, we are inclined to the view that a resort to the life tables is the only practicable way of measuring the difference between the fee-simple and the life estate. It follows that $18,250 was the result of appellant's services. But the point is made that, even on that basis, appellant was entitled under the evidence of his witnesses to a fee equal to one-third of that amount or the sum of $6,083.33. It must not be overlooked that there is a wide difference between a general employment where the client is able to pay and must pay, regardless

of the result, and an employment upon a contingent basis where the attorney usually bears all the expense and incurs the risk of not receiving anything at all for his services. Where the employment is of the latter kind, one-third of the amount recovered, and sometimes more in certain classes of cases, may be regarded as a reasonable fee. But where, as here, the compensation was certain, there was no long drawn-out trial, and only a question of law was involved, we are constrained to hold that an allowance of such a large percentage of the amount recovered would be excessive. However, after a thorough examination of the record of the case in which the legal services were performed, and a careful consideration of the evidence adduced on the hearing, we have concluded that a fee of $3,000 was too small, and that appellant's fee for all his services in the action should have been fixed at $4,500.

Wherefore, the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting, except JUDGE REES.